UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYNGENTA SEEDS, LLC, | No. 2:19-cv-01986-TLN-CKD |
| Plaintiff, | |
| v. | **ORDER** |
| SEMINIS VEGETABLE SEEDS, INC., | |
| Defendant. | |

This matter is before the Court on Defendant Seminis Vegetable Seeds, Inc.'s ("Defendant") Motion to Dismiss.  (ECF No. 17.)  Plaintiff Syngenta Seeds, LLC ("Plaintiff") filed an opposition.  (ECF No. 19.)  Defendant filed a reply (ECF No. 21), and Plaintiff filed a sur-reply (ECF No. 30).  For the reasons set forth below, the Court GRANTS in part and DENIES in part Defendant's motion.

///
///
///
///
///
///
///

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is an agribusiness involved in the research, development, and sale of plants and seed products, including watermelon pollenizer plant varieties used to produce seedless watermelons.  (ECF No. 1 at 2.)  Growers purchase such pollenizer plants and plant them in their fields to pollinate other watermelon plants.  (*Id.*)  Plaintiff and its predecessors have developed several watermelon pollenizers, including lines SP-1, SP-4, and Pollen Pro.  (*Id.*)  Pollen Pro is a hybrid variety created by crossing SP-1 and SP-4 varieties.  (*Id.*)  Plaintiff's intellectual property related to its watermelon pollenizer plants is protected through its patents, including U.S. Patent Nos. 6,759,576 ("'576 Patent"), 7,528,298 ("'298 Patent"), 7,071,374 ("'374 Patent"), and 7,550,652 ("'652 Patent"), and Plant Variety Protection ("PVP") Certificates, including PVP Certificate Nos. 200300006 and 200700023 (collectively, "PVP Certificates").  (*Id.*)

Defendant markets and sells a watermelon pollenizer variety called Wingman, which competes with Plaintiff's watermelon pollenizers.  (*Id.* at 13.)  Plaintiff alleges Defendant's plant breeders purchased Pollen Pro seed and derived the Wingman variety by planting and self-pollenating (a process sometimes also referred to as "selfing") Pollen Pro over multiple generations.  (*Id.* at 14–15.)  Plaintiff alleges Defendant has sold, and continues to sell, Wingman in the United States, willfully infringing Plaintiff's intellectual property rights and harming Plaintiff's business and commercial interests.  (*Id.* at 3.)

Plaintiff filed this action on September 30, 2019.  (*Id.* at 1.)  Plaintiff alleges claims for patent infringement under 35 U.S.C. § 1 *et seq.*, and PVP certificate infringement under the Plant Variety Protection Act, 7 U.S.C. § 2321 *et seq.* ("PVPA").  (*Id.*)  Defendant filed the instant motion to dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) on November 11, 2019.  (ECF No. 17.)

## II.     STANDARD OF LAW

A motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) tests the legal sufficiency of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Rule 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a); *see also Ashcroft v. Iqbal*, 556

2

U.S. 662, 677–78 (2009).  Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and quotations omitted).  "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims."  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true.  *Cruz v. Beto*, 405 U.S. 319, 322 (1972).  A court must give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963).  A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief."  *Twombly*, 550 U.S. at 570 (internal citation omitted).

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations."  *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678.  A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  Thus, '[c]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim."  *Adams v. Johnson*, 355, F.3d 1179, 1183 (9th Cir. 2004) (citations omitted).  Moreover, it is inappropriate to assume the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged."  *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

1   reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at

2   680.  While the plausibility requirement is not akin to a probability requirement, it demands more

3   than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.  This plausibility

4   inquiry is "a context-specific task that requires the reviewing court to draw on its judicial

5   experience and common sense." *Id.* at 679.  Thus, only where a plaintiff fails to "nudge [his or

6   her] claims . . . across the line from conceivable to plausible[,]" is the complaint properly

7   dismissed. *Id.* at 680 (internal quotations omitted).

8        If a complaint fails to state a plausible claim, "'[a] district court should grant leave to

9   amend even if no request to amend the pleading was made, unless it determines that the pleading

10  could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122,

11  1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995));

12  *see also Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in

13  denying leave to amend when amendment would be futile).  Although a district court should

14  freely give leave to amend when justice so requires under Rule 15(a)(2), "the court's discretion to

15  deny such leave is 'particularly broad' where the plaintiff has previously amended its

16  complaint[.]" *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir.

17  2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

18       **III.   ANALYSIS**

19       Defendant moves to dismiss the Complaint in its entirety.  (ECF No. 17-1 at 5.)  The

20  Court will address Defendant's arguments as to each of Plaintiff's claims in turn.

21            A.    Claims One and Two

22       In Claims One and Two, Plaintiff alleges Defendant directly infringed at least claim 19 of

23  the '576 Patent (Claim One) and at least claim 19 of the '652 Patent (Claim Two) under 35

24  U.S.C. § 271(g) ("§ 271(g)").  (ECF No. 1 ¶¶ 133–42, 150–57.)  These exemplary claims recite

25  methods or processes ("the patented processes") of producing a hybrid watermelon variety by

26  crossing a watermelon plant with a plant of the SP-1 or SP-4 varieties.  (*Id.* ¶¶ 31, 135–37, 151–

27  52.)  Plaintiff alleges Pollen Pro was made by the patented processes within the meaning of §

28  271(g) and therefore Defendant's Wingman was also made by the patented processes because

4

1    Defendant used Pollen Pro to make Wingman.  (*Id.* ¶¶ 31, 138–40, 153–55.)  As a result, Plaintiff

2    alleges Defendant has infringed, and continues to infringe, these exemplary claims of the '576

3    and '652 Patents under § 271(g) by using, selling, and/or offering to sell seed and plants made by

4    the patented processes.  (*Id.* ¶¶ 141–42, 156–57.)

5         In moving to dismiss, Defendant argues Plaintiff has not stated a claim for direct

6    infringement because Plaintiff used its own patented processes to create Pollen Pro and Plaintiff

7    does not allege Defendant carried out any steps of the patented processes to create Wingman.

8    (ECF No. 17-1 at 9; ECF No. 21 at 2.)  In opposition, Plaintiff does not dispute there are no

9    allegations that Defendant carried out any steps of the patented processes.  (ECF No. 19 at 12.)

10   Plaintiff instead argues § 271(g) does not require the accused infringer to have carried out the

11   patented processes.  (*Id.*)  Plaintiff's theory seems to be that because Plaintiff used its own

12   patented processes to make Pollen Pro and Defendant used Pollen Pro to make Wingman,

13   Defendant has used and sold products made by patented processes in violation of § 271(g).  (*Id.*)

14        Section 271(g) states in relevant part: "Whoever without authority imports into the United

15   States or offers to sell, sells, or uses within the United States *a product which is made by a*

16   *process patented* in the United States shall be liable as an infringer, if the importation, offer to

17   sell, sale, or use of the product occurs during the term of such process patent."  35 U.S.C. §

18   271(g) (emphasis added).  The central issue before the Court is whether Plaintiff's own use of its

19   patented process to create Pollen Pro is sufficient to confer § 271(g) liability to Defendant for

20   using Pollen Pro to create Wingman.

21        Plaintiff primarily relies on *Trustees of Columbia Univ. in City of N.Y. v. Roche*

22   *Diagnostics GmbH* ("*Roche*"), 272 F. Supp. 2d 90 (D. Mass. 2002), to support the contention that

23   it does not matter who carried out the patented process under § 271(g).  (ECF No. 19 at 12.)

24   Plaintiff cites a single sentence in *Roche* where the court stated, "it is irrelevant under [§] 271(g)

25   who manufactured the goods so long as the goods were manufactured using a patented process."

26   272 F. Supp. 2d at 108.  Based on this sentence, Plaintiff suggests Defendant can be liable for

27   using or selling a product regardless of who carried out the patented processes to make the

28   product at issue — even if it was the patentee.  However, Plaintiff ignores the context of the

5

1  *Roche* court's statement, which was made in response to the defendant's argument that it could

2  not be liable under § 271(g) for shipping the product at issue to the United States because a *third*

3  *party* used the plaintiff's patented processes to manufacture the product.  *Id.*  The court rejected

4  the defendant's argument and explained, "under [§ 271(g)], liability attaches to one who, without

5  authority, *imports* a product made by a patented process into the United States.  The defendant

6  need not have performed the patented process itself."  *Id.* (emphasis in original).

7       While *Roche* supports the notion that Defendant can be liable under § 271(g) even if

8  Defendant did not carry out the patented processes (i.e., if a third party manufactured the product

9  using Plaintiff's patented processes), it does not support the notion that Defendant can be liable

10  when Plaintiff carried out its own patented processes.  In fact, the court in *Roche* explained "[the

11  defendant's] liability depends on [the third-party manufacturer].  [The defendant] is liable only if

12  [the third-party manufacturer's] underlying actions directly infringed [the plaintiff's] patents."

13  272 F. Supp. 2d at 100.  Put simply, there must be an underlying infringing act.  *See id.* ("If the

14  product shipped by [the defendant] into the United States was made by a process that did not

15  directly infringe upon [the plaintiff's] patents, then [the defendant] cannot have violated [§]

16  271(g)."); *see also McRO, Inc. v. Namco Bandai Games Am., Inc.*, 23 F. Supp. 3d 1113, 1121

17  (C.D. Cal. 2013) (explaining § 271(g) "makes it an act of infringement to import, sell, offer to

18  sell, or use, a product *made by an infringing process*") (emphasis added).  For example, the *Roche*

19  court first analyzed whether the third-party manufacturer infringed the plaintiff's patented

20  processes and then found the defendant could be liable under § 271(g) for importing the product

21  that resulted from the infringement.  272 F. Supp. 2d at 108.

22       In contrast, Plaintiff in the instant case — the patentee — allegedly carried out its own

23  patented processes to create Pollen Pro, which Defendant bought and used to create Wingman.

24  Plaintiff fails to explain how Defendant can be liable under § 271(g) when there is no underlying

25  infringement alleged.  Neither *Roche* nor any of the other cases Plaintiff cites are persuasive as

26  each of them involve § 271(g) liability when someone other than the patentee carried out the

27  patented processes.  *See Bio-Tech. Gen. Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1560 (Fed. Cir.

28  1996) (holding that an entity who imported products it made by using another entity's patented

1   process was liable under § 271(g) even though the process was performed prior to the enactment

2   of the statute); *Zond, LLC v. Toshiba Corp.*, No. 13-cv-11581-DJC, 2014 WL 4056024, *3–5 (D.

3   Mass. Aug. 14, 2014) (defendant used plaintiff's patented process as steps in the manufacture of

4   the defendant's product); *Anvik Corp. v. Sharp Corp.*, No. 07 Civ. 0825 (SRC), 2010 WL

5   11416949, *2–6 (S.D.N.Y. Aug. 11, 2010) (same); *OKI America, Inc. v. Advanced Micro*

6   *Devices, Inc.*, No. C 04-03171 CRB, 2006 WL 2711555, *15 (N.D. Cal. Sept. 21, 2006) (same).

7   Plaintiff fails to explain how merely purchasing and using a product the patentee made by its own

8   patented process violates § 271(g).

9        Accordingly, the Court finds Plaintiff fails to state a claim against Defendant for directly

10  infringing the '576 and '652 Patents under § 271(g).  Because Plaintiff's indirect infringement

11  claims are derivative of its direct infringement claims, the Court also finds Plaintiff fails to state

12  indirect infringement claims for the '576 and '652 Patents under 35 U.S.C. § 271(b) ("§ 271(b)").

13  *See In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1333 (Fed.

14  Cir. 2012) ("[L]iability for indirect infringement of a patent requires direct infringement.").

15       Therefore, the Court GRANTS Defendant's motion to dismiss Claims One and Two and

16  DISMISSES those claims with leave to amend.

17              B.     Claim Three

18       In Claim Three, Plaintiff alleges Defendant directly infringed at least claim 1 of the '298

19  Patent under 35 U.S.C. § 271(a) ("§ 271(a)").  (*Id.* ¶¶ 165–68.)  This exemplary claim is directed

20  to a watermelon plant with certain characteristics made by a process involving crossing a

21  watermelon plant of the SP-1 variety with another watermelon plant.  (*Id.* ¶¶ 165–66.)  Plaintiff

22  alleges Pollen Pro was made using the recited process, and so too was Defendant's Wingman

23  because the use of the recited process to develop Pollen Pro was a necessary and essential

24  predicate to making Wingman.  (*Id.* ¶¶ 38, 138–40, 153–55.)  Plaintiff thus alleges Defendant has

25  infringed, and continues to infringe, exemplary claim 1 under § 271(a) by using, selling, and/or

26  offering to sell seed and plants of the Pollen Pro and Wingman varieties.  (*Id.* ¶¶ 167–68.)

27       In moving to dismiss, Defendant argues Plaintiff fails to allege either Pollen Pro or the

28  accused Wingman variety meet every element of any claim.  (ECF No. 17-1 at 13.)  More

specifically, Defendant argues claim 1 requires an accused watermelon plant that is produced by crossing a watermelon plant with an SP-1 plant and selected for certain characteristics, such as "a rind . . . which breaks under a pressure of not more than about 1,800 g when a fruit tester with a 2 mm tip is used or under a pressure of not more than about 2,300 g when a fruit tester with a 3 mm tip is used" and "a 5th leaf from the smallest new leaf on a vine having a surface area of not more than about 50 cm$^2$." (*Id.* at 13–14.)  Defendant argues Plaintiff does not allege Wingman was produced by crossing a watermelon plant with an SP-1 plant, nor does Plaintiff allege Wingman was selected for the specific characteristics recited in claim 1.  (*Id.* at 13–15.)  In opposition, Plaintiff argues Defendant's breeding activities using Pollen Pro constitute an unauthorized use that directly infringed at least claim 1 of the '298 Patent under § 271(a).  (ECF No. 19 at 17.)  Plaintiff also argues Wingman is a product made by the process recited in claim 1 for the same reasons articulated in the context of the '576 and '652 Patents — namely, that Wingman was made by the recited processes due to its proximity to the processes used to make Pollen Pro.  (*Id.*; ECF No. 30 at 9.)

Section 271(a) states "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States . . . infringes the patent."  35 U.S.C. § 271(a).  "A direct infringement claim does not satisfy the standards of *Twombly* and *Iqbal* where it does not at least contain factual allegations that the accused product practices every element of at least one exemplary claim." *AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1142–43 (N.D. Cal. 2019).  "This requirement is animated by the principle that the failure to meet a single limitation is sufficient to negate infringement of a claim."  *Id.* at 1143; *see Yi-Ping Lin v. Transform Partners LLC*, No. 18-cv-1933 DMS (KSC), 2019 WL 446403, *2 (S.D. Cal. Feb. 5, 2019).

In Claim Three, Plaintiff recites claim 1 of the '298 Patent and alleges Defendant infringed this claim by using Pollen Pro and selling Wingman.  (ECF No. 1 at 24–26.)  However, Plaintiff does not allege that either product — Pollen Pro or Wingman — practice every element of at least one exemplary claim.  (*See id.*)  Plaintiff fails to allege either Pollen Pro or Wingman possess the rind and leaf characteristics required under claim 1 of the '298 Patent.  (*See id.*)

1   Plaintiff also fails to allege Pollen Pro or Wingman is made by the specific process recited in the

2   '298 Patent.  (*See id.*)  Moreover, because Plaintiff's indirect infringement claim is derivative of

3   its direct infringement claim, the Court also finds Plaintiff fails to state indirect infringement

4   claims for the '298 Patent under § 271(b).  *See In re Bill*, 681 F.3d at 1333.

5          For these reasons, the Court GRANTS Defendant's motion to dismiss Claim Three and

6   DISMISSES this claim with leave to amend.

7                        C.     Claim Four

8          In Claim Four, Plaintiff alleges Defendant directly infringes at least claim 11 of the '374

9   Patent under § 271(a).  (*Id.* ¶ 184.)  This exemplary claim is directed to a process for increasing

10  the yield of seedless watermelon plants by using a watermelon pollenizer plant that is

11  homozygous for gene *e* to pollinate a triploid watermelon plant in order to produce and harvest

12  seedless watermelon fruit.  (*Id.* ¶¶ 176–77.)  Gene *e* when present in homozygous form results in

13  watermelon fruit having a brittle, crushable rind.  (*Id.* ¶ 178.)  As Plaintiff alleges, Pollen Pro is

14  homozygous for gene *e*, and so too is Wingman, which was created by selfing Pollen Pro.  (*Id.* ¶¶

15  178–83.)  Plaintiff alleges Defendant directly infringed exemplary claim 1 under § 271(a) by

16  using Pollen Pro and/or Wingman to produce seedless watermelon fruit.  (*Id.* ¶¶ 185–90.)

17         In moving to dismiss, Defendant argues Plaintiff fails to provide any basis to ascertain

18  whether the accused Wingman pollenizer is homozygous for gene *e* because there are no

19  allegations that Plaintiff obtained and genetically tested Wingman for the presence and copy

20  number of gene *e*.  (ECF No. 17-1 at 18–19.)  In opposition, Plaintiff points to its allegations that

21  both Pollen Pro and Wingman are homozygous for gene *e*.  (ECF No. 19 at 20.)  Plaintiff argues

22  Defendant is raising a factual dispute that is improper to decide on a motion to dismiss.  (*Id.*)

23         The Court agrees with Plaintiff.  Defendant's sole argument for dismissing Claim Four is

24  that Plaintiff must allege it obtained and genetically tested Wingman for the presence and copy

25  number of gene *e*.  (*See* ECF No. 17-1 at 19.)  Yet Defendant cites no authority to support the

26  proposition that Plaintiff must make these allegations to survive a motion brought under Rule

27  12(b)(6).  (*See id.*)  The Court must accept the factual allegations of the Complaint as true at this

28  early stage.  *Cruz*, 405 U.S. at 322.  Plaintiff alleges Defendant infringes claim 11 of the '374

                                                        9

1  Patent by pollenating triploid watermelon plants with the pollen of a watermelon pollenizer plants

2  that are homozygous for gene *e*, including Pollen Pro and Wingman.  (ECF No. 1 at 27.)  While

3  Defendant may dispute whether Pollen Pro and Wingman are homozygous for gene *e*, the Court

4  declines to resolve those factual disputes on a motion to dismiss.

5            Accordingly, the Court DENIES Defendant's motion to dismiss Claim Four.

6                    D.      Claims Five and Six

7            In Claims Five and Six, Plaintiff alleges Defendant infringed the PVP Certificates under 7

8  U.S.C. § 2541, explaining that these certificates cover not only Plaintiff's protected SP-1 and SP-

9  4 varieties but also varieties such as Wingman that are "essentially derived" or "not clearly

10  distinguishable" from the SP-1 and SP-4 varieties.  (*Id.* ¶¶ 116–118, 195–201, 209–13); *see also* 7

11  U.S.C. § 2541(c)(1)–(c)(2).  Plaintiff alleges that Defendant has infringed, and continues to

12  infringe, the PVP Certificates by (among other things) producing, conditioning, stocking, selling,

13  and dispensing Wingman.  (*Id.* ¶¶ 202, 214.)

14            In moving to dismiss, Defendant argues Plaintiff fails to allege Defendant used Plaintiff's

15  protected SP-1 or SP-4 varieties in any way.  (ECF No. 17-1 at 20.)  Defendant also argues it did

16  not infringe because a breeder is permitted to use a plant that is protected by a PVP certificate to

17  "develop" a new inbred line, as is the case here.  (*Id.* at 22.)  In opposition, Plaintiff argues it has

18  sufficiently alleged Wingman is covered by the PVP Certificates because it is "essentially

19  derived" or "is not clearly distinguishable" from the protected SP-1 and SP-4 varieties.  (ECF No.

20  19 at 24.)  In addition, Plaintiff argues the PVPA's breeder exemption does not apply because its

21  PVPA claims accuse Defendant of only those activities the PVPA explicitly recognizes as

22  infringing under § 2541(a), such as Defendant's production, conditioning, stocking, sale, offer for

23  sale, and dispensing of Wingman.  (*Id.*)

24            The PVPA provides "patent-like protection to novel varieties of sexually reproduced

25  plants (that is, plants grown from seed)."  *Asgrow Seed Co. v. Winterboer*, 513 U.S. 179, 181

26  (1995).  Under the PVPA, the U.S. Department of Agriculture may issue a PVP certificate to the

27  breeder of any novel variety of sexually reproduced plant that is new, distinct, uniform, and

28  stable.  *See* 7 U.S.C. § 2402(a).  "The PVPA is regularly discussed in terms of patent law and the

                                            10

1  Federal Circuit applies patent law to fill in the gaps in PVPA jurisprudence." *Zuckerman Family*

2  *Farms, Inc. v. Bidart Bros.*, No. 1:14-cv-01529-AWI-BA, 2014 WL 7239423, at *3 (E.D. Cal.

3  Dec. 17, 2014).  The PVPA enumerates specific acts which constitute infringement of a PVP

4  certificate.  *See* 7 U.S.C. § 2541(a).  The PVPA applies with equal force to "(1) any variety that is

5  essentially derived from a protected variety, unless the protected variety is an essentially derived

6  variety; [and] (2) any variety that is not clearly distinguishable from a protected variety."  7

7  U.S.C. § 2541(c)(1)–(c)(2).

8          The parties dispute whether Wingman constitutes a variety that is "essentially derived" or

9  "not clearly distinguishable" from the protected SP-1 or SP-4 varieties.  The parties also dispute

10  whether the PVPA's breeder exemption applies.  *See J.E.M. Ag Supply, Inc.*, 534 U.S. at 143

11  ("[O]ne cannot use a protected plant variety to produce a hybrid for commercial sale . . . however,

12  . . . a breeder can use a plant that is protected by a PVP certificate to 'develop' a new inbred

13  line.").  These are factual disputes that are not appropriate for determination on a motion to

14  dismiss and would benefit from further development of the record and clearer argument.  For the

15  purposes of ruling on the instant motion, the Court finds Plaintiff adequately alleges Wingman is

16  covered by the PVP Certificates and that Defendant infringed on those certificates by using

17  Wingman for activities that fall outside the scope of the breeder exemption.

18          Accordingly, the Court DENIES Defendant's motion to dismiss Claims Five and Six.

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

1    **IV.    CONCLUSION**

2          For the foregoing reasons, the Court hereby GRANTS in part and DENIES in part

3    Defendant's Motion to Dismiss (ECF No. 17) as follows:

4          1.   The Court GRANTS Defendant's motion as to Claims One, Two, and Three and

5               DISMISSES those claims with leave to amend; and

6          2.   The Court DENIES Defendant's motion as to Claims Four, Five, and Six.

7          Plaintiff may file an amended complaint not later than thirty (30) days from the date of

8    electronic filing of this Order.  Defendant's responsive pleading is due twenty-one (21) days after

9    Plaintiff files an amended complaint.

10         IT IS SO ORDERED.

11   **DATED:  January 10, 2022**

12

13

14                                    _____
                                      Troy L. Nunley
15                                    United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28